FILED

2010 Oct-26  AM 08:20
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **ALEX WAYNE MORTON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action Number |
| | ) | **5:10-cv-01658-AKK** |
| **CITY OF GUNTERSVILLE,** | ) | |
| **ALABAMA; JEREMY** | ) | |
| **KIRKWOOD; and TIM** | ) | |
| **NUGENT,** | ) | |
| | ) | |
| Defendants. | | |

## <u>MEMORANDUM OPINION AND ORDER</u>

The court has before it Defendant City of Guntersville's ("Guntersville" or "the City") Motion to Dismiss, (doc. 20), and Motion to Stay Discovery, (doc. 22), as well as Defendant Tim Nugent's ("Nugent") Motion to Dismiss, (doc. 24), and Motion to Stay Discovery, (doc. 26).  Plaintiff Alex Wayne Morton ("Plaintiff") has responded to each of the motions and Guntersville and Nugent have replied. The motions are ripe for determination.  For the reasons stated below, the court DENIES the motions to dismiss and MOOTS the motions to stay.

## I.  FACTUAL BACKGROUND

This case arises from an encounter Plaintiff had with two Guntersville

police officers, Nugent and Defendant Jeremy Kirkwood ("Kirkwood"), on January 7, 2010. Doc. 18 at 2. On that date, Plaintiff sat alone in the driver's seat of his vehicle by a boat launch ramp at Lake Guntersville, near Morrow Street in Guntersville, Alabama. *Id.* The front of the vehicle faced a ditch located between twenty and thirty feet in front of the vehicle. *Id.*

Kirkwood and Nugent spotted the vehicle, which was parked between two trees, and decided to approach it. *Id.* Kirkwood approached the vehicle on the driver's side.[1] *Id.* Plaintiff alleges that he held up his arms, but that "[i]mmediately thereafter," without warning or further notification of cause, Kirkwood shot him at least five times. *Id.* Plaintiff suffered five gunshot wounds, including one through his spinal cord, that shattered his T9 vertebra and left him paralyzed. *Id.* at 2-3. Plaintiff claims he was not facing Kirkwood and was in no position to harm Kirkwood. *Id.* at 2. He also alleges that Nugent was in "clear view and restrainable range" when Kirkwood "began to repeatedly shoot" Plaintiff. *Id.* Afterwards, police found no gun or other weapon on Plaintiff or anywhere at the scene. *Id.*

Plaintiff alleges that Defendants violated his "clearly established and well

---

[1] Plaintiff does not indicate whether Nugent approached on the passenger side or on the driver's side along with Kirkwood.

settled federal constitutional right to freedom from the use of excessive,

unreasonable and unjustified force against the person." *Id.* at 3.  Specifically,

Plaintiff sued: (Count I) Kirkwood and Nugent under 42 U.S.C. § 1983 for

violations of his Fourth Amendment rights by Kirkwood's use of excessive force

and Nugent's failure to intervene; (Count II) Kirkwood and Guntersville for

Kirkwood's assault and battery of Plaintiff and violation of Alabama Code § 11-

47-190; and (Count III) Guntersville under 42 U.S.C. § 1983 for the failure to train

its officers in the proper use of deadly force.  *Id.* at 4-7.

Nugent moves to dismiss Plaintiff's claim that Nugent failed to intervene

(Count I).  Guntersville moves to dismiss Plaintiff's claim for a failure to train

(Count III).

## II.  STANDARD OF REVIEW FOR MOTION TO DISMISS

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a

short and plain statement of the claim showing that the pleader is entitled to

relief."  "[T]he pleading standard Rule 8 announces does not require 'detailed

factual allegations,' but it demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, ---U.S.---, 129 S. Ct. 1937,

1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Mere

"labels and conclusions" or "a formulaic recitation of the elements of a cause of

action" are insufficient. *Iqbal*, 129 S. Ct. at 1949 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 1949 (citing *Bell Atl. Corp.*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.[2]

---

[2] At various points in his briefs, Plaintiff urges the court not to apply a heightened pleading standard and instead to focus on *Iqbal*. *See* Doc. 25 at 5-12. Defendants seem to, at all times, concede that *Iqbal* controls. To the extent the parties dispute the applicability of a

On a motion to dismiss under Rule 12(b)(6), the court accepts all of a plaintiff's factual allegations as true.  *See, e.g.*, *Grossman v. Nationsbank, N.A.*, 225 F. 3d 1228, 1231 (11th Cir. 2000).  However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth.  *Iqbal*, 129 S. Ct. at 1950.

## III.  ANALYSIS

Plaintiff asserts claims against two officers and against the City via § 1983 for Fourth Amendment violations.  The court addresses the sufficiency of Plaintiff's claims against Officer Nugent and the City below.

## A.  Municipal Liability for Failure to Train

Plaintiff is suing the City under state tort assault and battery and § 1983 for the city's purported failure to properly train its officers on the proper use of force. The city has only moved to dismiss the § 1983 claim.

### i. Demonstrating § 1983 Municipal Liability

Title 42 of the United States Code, Section 1983 states that every person

---

heightened pleading standard here, the Eleventh Circuit is clear that, after *Iqbal*, the heightened pleading in the qualified immunity context is no longer required.  *See Randall v. Scott*, 610 F.3d 701,709-10 (11th Cir. 2010) ("After *Iqbal*, it is clear that there is no 'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2), including civil rights complaints."); *see also Tims v. Hawthorne*, No. 10-0230-WS-B, 2010 WL 3528556, at *2 (S.D. Ala. Sept. 3, 2010) (rejecting Defendant's request for heightened pleading standard in the municipal liability and individual qualified immunity context). Thus, Plaintiff, here, needs only to meet the *Iqbal* plausibility pleading standard.

who acts under state law and causes a deprivation of a citizen's constitutional rights shall be liable to the injured party.  *See* 42 U.S.C. § 1983.  Section 1983 effectively gives citizens a cause of action against state officials and municipalities for constitutional torts.  The Supreme Court, however, has afforded broad protections to municipalities under § 1983 and has rejected typical respondeat superior liability for municipalities sued for the constitutional torts of its police officers.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Instead, to establish municipal liability via § 1983, a plaintiff must show that the municipality adopted an official policy or custom.  *Id.* at 694-95.  Significantly, a municipality is not automatically liable even if it failed to train or inadequately trained the officers who violated a plaintiff's constitutional rights.  *See Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).  Instead, a plaintiff must show that "the municipality inadequately train[ed] or supervise[d] its employees, this failure to train or supervise is a city policy, and that city policy cause[d] the employees to violate a citizen's constitutional rights."  *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)).

  "Since a municipality rarely will have an express written or oral policy of inadequately training or supervising its employees, the Supreme Court has further explained that a plaintiff may prove a city policy by showing that the

municipality's failure to train evidenced a 'deliberate indifference' to the rights of

its inhabitants." *Gold*, 151 F.3d at 1350.  To show "deliberate indifference," a

plaintiff must present evidence that the municipality was on notice of the need for

proper training in an area and chose not to take any action.  *Id.*  "A city may be

put on notice in two ways.  First, if the city is aware that a pattern of constitutional

violations exists, and nevertheless fails to provide adequate training, it is

considered to be deliberately indifferent.  Alternatively, deliberate indifference

may be proven without evidence of prior incidents, if the likelihood for

constitutional violation is so high that the need for training would be obvious."

*Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1293 (11th Cir. 2009) (internal

citations omitted).

     "The Supreme Court has not foreclosed the possibility that there may be

circumstances under which a single constitutional deprivation can be sufficient to

establish a policy or custom when the need for more or different training is so

obvious that the failure to provide such training constitutes deliberate

indifference."  *Glidwell v. Gantt*, 176 F. Supp. 2d 1257, 1262 (M.D. Ala. 2001)

(citing *Canton*, 489 U.S. at 390 n.10).  In *Canton*, the Supreme Court wrote that "it

may happen that in light of the duties assigned to specific officers or employees

the need for more or different training is so obvious, and the inadequacy so likely

to result in the violation of constitutional rights, that the policymakers of the city

can reasonably be said to have been deliberately indifferent to the need." *Id.* at

390.  The Court explained further:

> For example, city policymakers know to a moral certainty that their police
> officers will be required to arrest fleeing felons.  The city has armed its
> officers with firearms, in part to allow them to accomplish this task.  Thus,
> the need to train officers in the constitutional limitations on the use of
> deadly force can be said to be 'so obvious,' that failure to do so could
> properly be characterized as 'deliberate indifference' to constitutional
> rights.

*Id.* at 390 n. 10 (internal citation omitted).

### ii.  *Plaintiff Asserts Plausible Claim for Failure to Train*

Because Plaintiff essentially concedes that his complaint does not allege a

pattern of constitutional violations, (doc. 28 at 15-16), his claim rests on the

contention that the City's need to train its officers in the use of deadly force is so

obvious that the failure to do so, even in the absence of prior incidents, amounts to

deliberate indifference.  The City asserts that "it is not at all clear" that the law

supports a failure to train claim based on a single incident, (doc. 21 at 10 n.1), and,

if it does, that Plaintiff's complaint still does not sufficiently allege factual detail

to survive a motion to dismiss under *Iqbal*'s pleading requirements.

The Supreme Court retreated from a broad interpretation of *Canton*'s

"obvious need" example of deliberate indifference, noting that it had only been

hypothezing within a "narrow range of circumstances." *Bd. of Cnty. Com'rs of Bryan Cnty. Okl. v. Brown*, 520 U.S. 397, 398 (1997). As the City notes, the Eleventh Circuit has used *Brown* to reject broad assertions that a single constitutional violation can support a finding of municipal liability for failure to train. *See Gold*, 151 F.3d at 1352; *see also* Doc. 21 at 11. In fact, our sister court in the Middle District of Alabama has referred to *Canton*'s "obvious need" requirement as "a test that is almost impossible to meet." *Gilliam ex rel. Waldroup v. City of Prattville*, 667 F. Supp. 2d 1276, 1292 (M.D. Ala. 2009). Indeed, the Supreme Court has only noted a single example of a need to train that is so obvious that a city could be liable without knowledge of prior constitutional violations. *See Canton*, 489 U.S. at 390 n.10; *see also Gilliam*, 667 F. Supp.2d at 1292 (noting that same lone example).

The City contends that the Supreme Court's "hypothesizing" should not extend beyond instances where the municipality failed to train its officers "at all" in the use of deadly force. Doc. 21 at 11. However, that contention simply is not supported by the current case law.[3] Moreover, several cases within the Eleventh

---

[3] The City cites no binding authority, nor has the court found any, for the proposition that the "obvious need" test can only be met where no training exists at all. In fact, the Supreme Court and the Eleventh Circuit discuss the "obvious need" test and the *Canton* hypothetical as requiring a "glaring omission in a training regimen," *see Brown*, 520 U.S. at 410, and more than "possible imperfections . . . in the City police officer's training," *see Gold*, 151 F.3d at 1352, to rise to the "obvious need" threshold. Thus, those courts specifically did not hold, nor imply, that

Circuit demonstrate that, while courts remain hesitant in expanding areas of

"obvious need,"  an officer's training in firearms and use of deadly force still may

support such a claim under *Canton*.  *See, e.g.*, *Lewis*, 561 F.3d at 1293-94

(rejecting training for the use of hobbles, proper hogtying or fettering as an area of

obvious need for training as compared to the recognized need for adequate

training in the use of  firearms); *Gilliam*, 667 F. Supp. 2d at 1292 (noting that "the

use of force where firearms are provided to officers" is the "only example of a

need to train being 'so obvious' that a municipality could be liable without a

pattern of constitutional violations"); *Glidwell*, 176 F. Supp. 2d at 1262 (holding

that the failure to train an officer in administrative tasks did not fit into the limited

circumstances that the Supreme Court left open for finding an "obvious need" for

training); *Ellison v. City of Montgomery*, 85 F. Supp. 2d 1178, 1183 (M.D. Ala.

1999) (granting summary judgment for defendants because, although failure to

train in the proper use of firearms could demonstrate deliberate indifference, the

plaintiff did not establish any evidence of  the training program's alleged

---

a complete absence of training in firearms is required to find municipal liability for a failure to
train claim under the *Canton* "obvious need" example.  Instead, they seem to imply that an
inadequacy or omission from a training regimen could be enough.  *See Brown*, 520 U.S. at 410;
*see also Lewis*, 561 F.3d at 1293 (citing *Canton* for the proposition that proper use of deadly
force is an area that is "so obvious as to require *adequate* training by the municipality to avoid
liability") (emphasis added).

inadequacies).[4]

Thus, while the Eleventh Circuit disfavors an *expansion* of subjects for which the need for police training is obvious, each of the cases above implicitly or explicitly recognized that proper training in police use of firearms is an area of "obvious need." Failure to do so may, therefore, demonstrate a municipality's deliberate indifference to the constitutional rights of its citizens, such that its indifference is a custom or policy. Thus, even a single constitutional violation caused by that failure to train might support municipal liability. In other words, Plaintiff's claim falls squarely within the narrow circumstances left open for a valid *Monell* claim even without a pattern of prior violations. *See Canton*, 489 U.S. at 390 n.10. This court cannot now foreclose a possibility that the Supreme Court specifically left open, especially on a motion to dismiss. Plaintiff is entitled to discovery on this issue to try to prove his claim. Whether he can and survive the city's likely summary judgment motion is an issue the court is certain it will have to address.

The City also moves to dismiss because Plaintiff fails to allege any specifics

---

[4] Significantly, the court notes that these cases and the vast majority of the cases the City cites in its briefs were resolved well past the motion to dismiss stage. In other words, presumably, those courts allowed the plaintiffs to conduct some discovery regarding the alleged training inadequacies.

about how the City trains its officers.  Doc. 21 at 10; Doc. 32 at 8.  However,

Plaintiff need not allege specifics of the City's training program to survive a

motion to dismiss.  *See, e.g.*, *Tims v. Hawthorne*, No. 10-0230-WS-B, 2010 WL

3528556, at \*2-3 (S.D. Ala. Sept. 3, 2010) (holding that specific allegations about

the content of an officer's training are useful but not necessary to survive a motion

to dismiss).

   The City also argues that dismissal is warranted because Plaintiff makes

only legal conclusions about its training.  Doc. 21 at 12-13.  To support its

contention, the City cites to *Wright v. City of Dallas, Tex.*, No. 3:09-CV-1923-B,

2010 WL 3290995 (N.D. Tex. July 19, 2010), to argue that Plaintiff must plead

specific facts sufficient to show an official custom or policy in order to meet *Iqbal*.

*See* Doc. 32 at 6; *see also Wright*, 2010 WL 3290995 at \*3-4.  However, the

plaintiff in *Wright* specifically asserts a claim regarding widespread abuses and,

thus, does not purport to bring a claim via *Canton*'s "obvious need" hypothetical.

*See id.* at \*3.  Where a single constitutional deprivation occurs in an area with "so

obvious" a need for training, like the proper use of firearms during an arrest or

investigation, the policy or custom in question is the absence of adequate training

and the deliberate indifference to constitutional rights underlying such an absence.

 *See Canton*, 489 U.S. at 390.  In such a case, Plaintiff need not give specifics

about a pattern of violations because, unlike in *Wright*, such a pattern of abuse is not necessary to put the municipality on notice and demonstrate indifference. *See Lewis*, 561 F.3d at 1293. Thus, Plaintiff's allegations are sufficient to survive a motion to dismiss.

In short, Plaintiff alleges specific facts that, if true, present a plausible claim that the City inadequately trained officers in an area of such obvious need that the absence of training belies deliberate indifference by the City.[5] Specifically, Plaintiff asserts that two police officers approached a parked car and used deadly force upon an unarmed individual while his arms were raised and the car still parked. The officers had neither placed him under arrest nor articulated cause for suspicion, and he had done nothing to provoke or threaten the officers. *See* Doc. 18 at 2-3. Such allegations, if true, constitute excessive force and unreasonable use of deadly force. *See* Part IV.B.ii *infra*. Therefore, Plaintiff's facts present a plausible claim and, thus, survive the City's motion to dismiss.[6]

_____

[5] The court has little trouble finding it plausible that if a police officer shoots an unarmed man five times without warning or cause, the officer's training in the constitutional limits of the use of deadly force may have been inadequate. That inadequacy cannot be *proven* using Kirkwood's alleged behavior alone, but Kirkwood's actions, as alleged, make Plaintiff's claim regarding the City's failure to train plausible.

[6] This court recently denied a motion to dismiss a similar complaint where the plaintiff pleaded specific factual detail as to the use of excessive force but made even more conclusory allegations as to the city's custom, policy, and training than those made by Plaintiff. *See Harris v. City of Gurley*, No. 5:09-cv-02108-CLS, Doc. 32 at *16-20 (N.D. Ala. Mar. 26, 2010) (Smith, J.).

**B. Individual Officer Liability for Failure to Intervene**

Turning next to Defendant Nugent's motion, the court notes again that Plaintiff is suing Nugent under § 1983 for a failure to intervene to stop Kirkwood from shooting Plaintiff five times.  Although Nugent presents arguments for dismissal that may well prevail at the summary judgment stage, the court finds that Plaintiff has presented a plausible claim to survive a motion to dismiss.

*i. Demonstrating Absence of Qualified Immunity of Individual Officers*

"[Q]ualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights."  *Oliver v. Fiorini*, 586 F. 3d 898, 904 (11th Cir. 2009) (citations omitted).  The purpose of that immunity is to allow officials to carry out discretionary duties without fear of liability and harassing litigation.  *Id.* (citations omitted).  Qualified immunity protects from suit "all but the plainly incompetent or one who is knowingly violating the federal law," but applies only to officers acting within their official authority.  *See id.* at 904-05.[7]

A court is "obliged to grant qualified immunity to a law enforcement officer unless the plaintiff can demonstrate: first, that the facts when viewed in a light

---

[7]Parties here do not contest that Kirkwood and Nugent were acting in their official capacity.

most favorable to the plaintiff establish a constitutional violation; and, second, that the illegality of the officer's actions was 'clearly established' at the time of the incident." *Id.* (citing *Pearson v. Callahan*, - - - U.S. - - -, 129 S.Ct. 808, 815-16, 818 (2009)).  Thus, to survive Nugent's motion to dismiss, Plaintiff must present a plausible claim that a constitutional violation occurred and that Nugent's conduct violated "clearly established" law.  *See Iqbal*, 129 S.Ct. at 1949.

ii. *Identifiable Constitutional Violation*

Because this case is before the court on a motion to dismiss, the court must ensure that Plaintiff's claim asserts facts that support every element necessary to state a claim.  Thus, the court must assess whether the complaint alleges a constitutional violation.  The Supreme Court recently concluded that, in cases addressing qualified immunity, a court may now consider whether a constitutional violation occurred and whether the law was clearly established in the order it chooses.  *See Pearson*, 129 S.Ct. at 818 (retreating from the rigid sequence the Court previously articulated).  Nonetheless, the court chooses to conduct the constitutional violation analysis first.

In the context of the Fourth Amendment's protections against the use of excessive force, the Supreme Court has provided guidance in determining whether the use of deadly force is reasonable when apprehending a suspect.  *See generally*

*Tennessee v. Garner*, 471 U.S. 1 (1985).  The Court explained:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

*Id.* at 11-12.  The Eleventh Circuit noted that "Garner says something about deadly force but not everything," *Long v. Slaton*, 508 F.3d 576, 580 (11th Cir. 2007), and stressed that "[p]rotecting the innocent public from risks that are not remote is a government interest."  *Id.* at 582.   It is clear, for example, that a suspect's aggressive or reckless use of a motor vehicle can justify the use of deadly force. *See, e.g.*, *Long*, 508 F.3d at 582; *Pace v. Capobianco*, 283 F.3d 1275, 1282 (11th Cir. 2002); *see also McCullough v. Antolini*, 559 F.3d 1201,1207 (11th Cir. 2009) ("We have, however, consistently upheld an officer's use of force and granted qualified immunity in cases where the decedent used or threatened to use his car as a weapon to endanger officers or civilians immediately preceding the officer's use of deadly force.").

Plaintiff's facts present police actions that, if true, fail to satisfy the reasonableness inquiry relevant to an officer's resort to deadly force.  Plaintiff had

no gun or weapon of any kind.  Plaintiff sat in a *parked* vehicle, facing away from

Defendants.  He raised his arms immediately as Kirkwood and Nugent approached

and made no threatening motions.  Moreover, Plaintiff asserts that Kirkwood and

Nugent had no probable cause to believe he had committed any felony, much less

a violent felony, nor had Defendants placed Plaintiff under arrest.  Finally,

Kirkwood did not ask the Plaintiff anything, instead firing at him at least five

times without warning.  *See generally* Doc. 18 at 2-3.

While the court recognizes the need for police officers to make difficult,

split-second decisions and agrees that such decisions should receive some

deference, at this stage in the litigation, the court has no facts before it that justify

the use of deadly force.  Thus, Plaintiff's factual allegations support a claim that

Defendants used excessive and deadly force in violation of the Fourth

Amendment.

### iii.  Clearly Established Right and Duty to Intervene

The Eleventh Circuit applies the qualified immunity defense "to dismiss a

complaint at the 12(b)(6) stage where, (1) from the face of the complaint, (2) [it]

must conclude that (even if a claim is otherwise sufficiently stated), (3) the law

supporting the existence of that claim – given the alleged circumstances – was not

already clearly established, (4) to prohibit what the government-official defendant

is alleged to have done, (5) before the defendant acted." *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1023 (11th Cir. 2001).  Thus, unless Plaintiff alleges violations of clearly established law, the court must dismiss his failure to intervene claim against Nugent at the 12(b)(6) stage.  *See id.* at 1022.   Indeed, qualified immunity protects Nugent "unless the law preexisting the defendant official's supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in defendant's place would be on notice that what the defendant official was doing would be clearly unlawful given the circumstances."  *See Pace v. Capobianco*, 283 F.3d 1275, 1282 (11th Cir. 2002).

"In order to determine whether a right is clearly established, we look to the precedent of the Supreme Court of the United States, [the Eleventh Circuit's] precedent, and the pertinent state's supreme court precedent, interpreting and applying the law in similar circumstances."  *Oliver v. Firorino*, 586 F.3d 898, 907 (11th Cir. 2009) (citation omitted); *see also Post v. City of Fort Lauderdale*, 7 F. 3d 1552, 1557 (11th Cir. 1993) ("If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.").

However, courts have held that the absence of such case law does not necessarily indicate that the law was not clearly established.   *See Oliver*, 586 F.3d at 907 ("However, in some cases, we may find that the right is clearly established,

even in the absence of case law.  One such instance is where the case is one of 'obvious clarity' - i.e., where the officer's conduct 'lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of fact-specific case law' on point.")(citations omitted); *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 927 (11th Cir. 2000) ("Nor do we think particularized case law is necessary to overcome [Defendant's] claim of qualified immunity.").

The Supreme Court characterized the murky delineation of "clearly established law" stating "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  However, the Court continued by noting that its prior opinions "make[] clear that officials can still be on notice that their conduct violates established law even in novel factual circumstances" as the "salient question" is whether the state of the law gave defendants fair warning that their alleged conduct was unconstitutional.  *Id.* at 741.

*iv.  Plaintiff's Claim Sufficiently Alleges That Nugent Failed to Intervene*

The question before the court is whether Nugent had fair warning that (1)

Kirkwood's alleged conduct was an illegal and excessive use of force and (2) in the presence of such conduct, he had a duty to intervene.  As Nugent states, "unless a plaintiff in a § 1983 case can point to case law that fairly warns the government actor of the unconstitutionality of the challenged conduct, qualified immunity should protect the officer."  Doc. 34 at 5.

Plaintiff asserts that both men approached his car.  Plaintiff does not identify Nugent's location, but does assert that Kirkwood was on the driver's side.  And Plaintiff states that Nugent was in clear view of Kirkwood and within a distance that he could have restrained him.  Doc. 18 at 2.  Plaintiff's facts provide a factual scenario in which, during the five or more shots fired by Kirkwood, Nugent could have, at the very least, intervened by telling Kirkwood to stop.  *See Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 925 (11th Cir. 2000) (reversing summary judgment for non-intervening defendant because he "watched the entire event and was in voice contact" with his fellow officer, making the case "distinguishable from those cases where an officer who failed to intervene was found not liable because he did not observe the violation or have the opportunity to intervene").  "That a police officer had a duty to intervene when he witnessed the use of excessive force and had the ability to intervene was clearly established in February 1994."  *Id.* at 927.  Thus, Nugent's general pleas that the law was not

clearly established fail.  If every reasonable officer would know that punching a

non-resisting criminal suspect is not constitutionally protected, *see Hadley*, 526

F.3d at 1333-34, then it follows that every reasonable officer would also know that

*shooting* a non-resisting suspect is not protected either.

Nugent maintains, however, that the law is not clearly established, nor can it

be, that "an officer who fails to place himself in the line of fire" is liable for failure

to intervene.  Doc. 34 at 15.  Nugent reiterates that "[t]here is no factually similar

case that clearly established that a police officer has a duty to place himself in the

line of fire of a semi-automatic weapon."  Doc. 34 at 15.  First, previous case law

need not mirror the instant case's specific facts.  *See Hope*, 533 U.S. at 741

(reversing the Eleventh Circuit's more rigid rule and concluding that the facts of

the instant case need not be "materially similar" to the facts of existing precedent).

Still, Nugent claims that the law is not clear that he should have moved into the

line of fire to somehow stop Kirkwood's use of deadly force.  But such a claim

overstates the conduct implied in an officer's duty to intervene.  For example, no

case has held that a fellow officer needs to thrust himself in the line of a Taser

charge or pit himself between a police dog and the victim.  What the law does

require, however, is an attempt to intervene.

If, in fact, Nugent attempted to intervene or if he had no time to react nor

any indication Kirkwood might use his gun, then Nugent's qualified immunity

defense will prevail at a later stage.  Keeping in mind that qualified immunity

protects officers from not just liability but also litigation, the court still is bound

by Eleventh Circuit precedent that makes clear that a duty to intervene when an

officer witnesses the use of excessive force has been clearly established for well

over a decade.  *See, e.g.*, *Sanchez v. Hialeah Police Dept.*, 357 Fed. Appx. 229,

234 (11th Cir. 2009) ("[A]n officer's duty to intervene in this regard was clearly

established in this Circuit."); *Priester*, 208 F.3d at 925 (noting that an officer's

duty to intervene to stop the use of excessive force was clearly established in

1994); *see also Oliver*, 586 F.3d at 908 (holding that because the repeated use of a

Taser was so disproportional to the threat posed –where plaintiff was not accused

or suspected of any crime, did not act aggressively, made no effort to flee, and

generally complied with officers' commands –it was clear to any officer that such

disproportional use of force was unlawful).

Nugent also argues that Plaintiff fails to state a claim because he has not and

cannot supply details regarding Nugent's location when Kirkwood shot Plaintiff

nor has he asserted how rapidly those shots were fired.  Plaintiff has, however,

stated that Nugent was within clear view of Kirkwood and within restrainable

range.  Doc. 18 at 2.  Such an assertion, in conjunction with Plaintiff's other facts,

meets *Iqbal*'s plausible claim requirement.   *See Sanchez*, 357 Fed. Appx., at 233-34 (concluding that the officer was not entitled to qualified immunity on summary judgment where, "despite being in clear view and restrainable range," he failed to intervene).   While Plaintiff does not specifically allege Nugent's location, details on exactly where an observer is located or how long he had to observe are not required to survive the motion to dismiss here.   *See, e.g.*, *Dwyer v. City of Corinth, Tex.*, No. 4:09-CV-198, 2009 WL 3856989, at *5-6 (E.D. Tex. Nov. 17, 2009) (denying a motion to dismiss a failure to intervene claim where plaintiff did not allege the location of the observers or how long they observed, but an opportunity existed for defendant to realize that the witnessed conduct constituted excessive force).

Significantly, Plaintiff asserted that Nugent was within "clear view and restrainable range" of Kirkwood, language that the Eleventh Circuit used to describe a non-intervening officer located on the same side of the car as his fellow officer.   *See Sanchez*, 357 Fed. Appx. at 233-34.   And the court must accept Plaintiff's assertion that Nugent was nearby even if Nugent contends he was not. *See id.* at 234 (noting that even though defendant claims he was on the opposite side of the car and could not intervene when the incident started, the court must accept the plaintiff's claim that the officer was in close proximity on the same side

of the car for purposes of summary judgment).  Moreover, Plaintiff need not

specifically allege Nugent's location in order to survive a motion to dismiss or

summary judgment on qualified immunity.  *See Velazquez v. City of Hialeah*, 484

F.3d 1340, 1342 (11th Cir. 2007) (reversing summary judgment for defendants on

qualified immunity grounds because defendant's "testimony that he was beaten

after being handcuffed and that two officers were *present*," even though he could

not identify their location or whether one or both beat him, permits an inference of

excessive force and failure to intervene) (emphasis added).

Finally, Nugent also moves to dismiss because, he asserts, Plaintiff alleges

no facts indicating the speed with which Kirkwood fired his weapon, whether

Nugent had notice that Kirkwood intended to use his weapon, or whether it was

"conceivable for Officer Nugent to have attempted to stop Officer Kirkwood from

firing his weapon."  Doc. 34 at 16.  In short, Nugent merely asserts that Plaintiff

failed to allege facts supporting that Nugent was in a position to intervene.

However, it is plausible that during the time it took Kirkwood to fire at least five

rounds at Plaintiff, Nugent could have intervened and at least tried to stop the use

of deadly force.  Moreover, it is likewise plausible that the time it takes to pull

one's gun and fire five times is not as quick as a single punch to an already

restrained suspect.  *Cf. Hadley v. Gutierrez*, 526 F. 3d 1324, 1330-31 (11th Cir.

2008) (holding that the observing co-defendant had no reasonable opportunity to intervene where the excessive force was in the form of only a *single* punch to the plaintiff's stomach) (emphasis added).

In sum, Plaintiff has alleged sufficient facts such that, if true, present a plausible claim for violations of his Fourth Amendment rights.  Likewise, if, as Plaintiff alleges, Nugent was in a position to intervene, then Nugent cannot invoke qualified immunity to protect his inaction while, according to Plaintiff, his partner repeatedly shot an unarmed citizen who was neither under arrest nor under suspicion of any crime.

## IV.  CONCLUSION

Although the court is denying the motions to dismiss, the court notes that Plaintiff still must present a great deal of evidence to demonstrate that, in particular, the City's training actually was inadequate.  Although on the facts currently before this court, Kirkwood's behavior is improper and unacceptable, that alone does not indicate that the training he received was inadequate.  And to succeed on the merits, Plaintiff will have to demonstrate a causal connection between the alleged inadequate training and Kirkwood's actions on January 7, 2010.  Likewise, Plaintiff must show that Nugent actually had an opportunity to intervene before Kirkwood finished firing.  Moreover, Plaintiff must present

evidence supporting his allegations that the use of force involved was unreasonable and excessive.  The court so notes only to reiterate to each of the parties that the denial of qualified immunity at the motion to dismiss stage signals nothing regarding such a defense on summary judgment after appropriately tailored discovery.

For the reasons stated above, the court DENIES Defendants' motions to dismiss.  The motions to stay are MOOT.  The parties must file their Rule 26 planning report by **Wednesday, November 24, 2010**.  Discovery shall commence accordingly.

Done the 26th day of October, 2010.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE