FILED

2012 Feb-22  AM 10:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN  DIVISION

| | | |
|---|---|---|
| **ALEX WAYNE MORTON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **5:10-cv-1658-AKK** |
| **CITY OF GUNTERSVILLE,** *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Alex Wayne Morton ("Plaintiff") filed this action on June 24, 2010, against Officer Jeremy Kirkwood ("Officer Kirkwood") alleging violations of the Fourth Amendment pursuant to 42 U.S.C. § 1983, and state law claims for assault, battery, and excessive force.[1]  Doc. 1; doc. 18.  Officer Kirkwood alleges that he is entitled to qualified immunity and, as a result, moved for summary judgment.  Doc. 60.  The motion is fully briefed.  Docs. 66 & 70.  For the reasons stated below, the court **DENIES** Officer Kirkwood's motion.

---

[1] Plaintiff filed this action against Officer Kirkwood, the City of Guntersville, and Officer Tim Nugent.  Doc. 1; doc. 18.  However, pursuant to the Parties' Stipulation of Dismissal, doc. 54, the court dismissed the claims against Officer Nugent and Guntersville, doc. 55.  Thus, only the claims against Officer Kirkwood remain.

This matter is set for a **pretrial conference at 9:00 a.m. on Thursday, April 19, 2012, and for trial at 9:00 a.m. on Monday, May 21, 2012, at the Huntsville Federal Courthouse, Huntsville, Alabama**.

Part I of this opinion is a discussion of the summary judgment standard.  In Part II, the court outlines the facts that form the basis for this lawsuit.  Part III is the court's analysis of the parties' respective contentions, and it is divided into two subparts.  In subpart A, the court analyzes Officer Kirkwood's qualified immunity defense for Plaintiff's federal claim, and in subpart B, Officer Kirkwood's contention that he is due immunity on the state law claims.  Finally, Part IV is the court's conclusion.

## I. SUMMARY JUDGMENT STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  To support a summary judgment motion, the parties must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c).  Moreover, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a

2

party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573,

1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. <u>FACTUAL BACKGROUND</u>[2]

On January 7, 2010, just before midnight, Officer Kirkwood and his partner, Officer Timothy Nugent ("Officer Nugent"), observed a vehicle parked between two trees and adjacent to a lake in a closed city park.[3]  Doc. 60-1, at 25; doc. 60-7, at 1.  Although vehicles are allowed in the park after-hours, Officer Kirkwood was suspicious nonetheless because of the time of night, the location, and the cold icy weather.  Doc. 60-2, at 8 & 20.  Consequently, with Officer Nugent driving, the officers entered the park to investigate.  *Id.*

When they pulled into the park, the officers allegedly saw Plaintiff walking and then running from the lake's edge.[4]  Doc. 60-2, at 23; doc. 60-3, at 13.  As a result, Officer Nugent turned on the overhead blue lights of the patrol vehicle.  Doc. 60-3, at 15.  Officer Kirkwood exited the patrol vehicle, yelled "Police, stop,"

_____

[2] When evaluating the motion for summary judgment, the court resolves all factual disputes in Plaintiff's favor "when sufficient, competent evidence . . . supports Plaintiff's version of the disputed facts."  *See Pace v. Capobianco*, 283 F.3d 1275, 1276 (11th Cir. 2002).

[3] Officers Kirkwood and Nugent were on duty checking icy road conditions.  Doc. 60-2, at 19.

[4] Officer Kirkwood alleges he immediately identified the individual running as Plaintiff due to two previous encounters, including one during which Plaintiff allegedly reached for a gun underneath the car seat when Officer Kirkwood attempted to arrest Plaintiff.  Doc. 60-2, at 15 & 20.  The second arrest occurred when Plaintiff failed to appear in court for the first arrest.  *Id.*

and pursued Plaintiff on foot, around a large tree, and towards the direction of Plaintiff's vehicle. Doc. 60-3, at 14 & 21; Doc. 60-2, at 24. After parking the patrol vehicle, Officer Nugent also pursued Plaintiff on foot, except that he went around the opposite side of the large tree in an attempt to cut-off Plaintiff. Doc. 60-3, at 21. During the chase, allegedly, Plaintiff ran to his vehicle, entered the driver's side, and shut the door. Doc. 60-2, at 24. Interestingly, Plaintiff contends he never left his car and that the officers simply could not have seen him walking or running from the lake's edge. Doc. 60-1, at 25 & 40.

When Officer Kirkwood reached Plaintiff's car, he drew his weapon and tapped the car window with the barrel, and again ordered Plaintiff to stop.[5] Doc. 60-2, at 24-25. Officer Kirkwood saw Plaintiff's left hand on the steering wheel and did not see a weapon. Doc. 60-2, at 24. Although Officer Kirkwood cannot recall the exact moment Plaintiff's vehicle moved, Officer Kirkwood alleges soon after he approached the vehicle, it began to accelerate rapidly towards Officer Nugent. Doc. 60-2, at 11 & 25. To stop Plaintiff from running over Officer Nugent, Officer Kirkwood shot Plaintiff seven times and only stopped shooting

_____

[5] Officer Kirkwood contends Plaintiff's vehicle was stationary when he approached it, but cannot recall whether the vehicle started moving when he tapped on the car window and yelled stop. Doc. 60-2, at 11 & 25. Plaintiff disputes this fact and contends Officer Kirkwood never knocked on the car window. Doc. 60-1, at 29.

when the vehicle stopped moving forward.  Doc. 60-2, at 9, 12 & 25-26; doc. 62, at 120:3-11.

Officer Nugent confirms that he ended up in front of Plaintiff's vehicle and that Plaintiff had the car engine revved.  Doc. 60-3, at 23.  However, Officer Nugent testified that he immediately stepped away from the vehicle's path and drew his weapon on low.  *Id.*, at 7 & 23.  Soon thereafter, although he did not see the shooting, Officer Nugent heard gun shots.  *Id.*  Further casting doubt on Officer Kirkwood's testimony, Officer Nugent testified that he does not recall whether Plaintiff accelerated the vehicle towards him and that he would have shot Plaintiff if he felt threatened.  Doc. 60-3, at 25-27.

To no surprise, Plaintiff has a different recollection.  Specifically, Plaintiff contends that he had his vehicle in drive to leave the park prior to the officers approaching him.  Doc. 60-1, at 28.  However, because of the snow, Plaintiff's vehicle only moved about 12 feet before he noticed Officer Kirkwood.  *Id.*, at 29.  At that point, Plaintiff placed the vehicle in park and held his hands up when Officer Kirkwood came to the car window.  *Id.*  Furthermore, Plaintiff alleges the officers never turned on the blue lights on their patrol car as they claim.  *Id.*  Nonetheless, Plaintiff admits that he knew it was a police vehicle.  *Id.*  Moreover, although Plaintiff is unsure if his car moved after he saw the patrol vehicle, he

contends that he had it in park when Officer Kirkwood shot him. *Id*., at 28-29. Furthermore, Plaintiff claims he never saw Officer Nugent in front of his vehicle and thought Officer Kirkwood was alone. *Id*., at 29-30.

Ultimately, Plaintiff's car ended up in reverse with the back end up against a tree. *Id.*, at 31; doc. 60-2, at 21. Plaintiff believes he may have knocked the transmission into reverse when he fell over from the gun shots. Doc. 60-1, at 31. Plaintiff contends the officers dragged him out of his car and read him his Miranda rights prior to the ambulance arriving. *Id.*, at 30. However, Officer Kirkwood contends Plaintiff remained in the vehicle and that he never advised Plaintiff of his Miranda rights. Doc. 60-2, at 12. In any event, as a result of the shooting, Plaintiff is paralyzed from the middle of his chest down and can only move his arms. Doc. 60-1, at 42.

Following the incident, investigators located a bag along the lake's edge, and about sixty feet from Plaintiff's vehicle, that contained components of a methamphetamine lab. Doc. 60-6, at 80. Plaintiff was subsequently indicted on two counts of unlawful manufacture of a controlled substance in the second degree and one count of unlawful possession of precursor chemical. Doc. 60-10, at 22.

### III.  ANALYSIS

Plaintiff raises an excessive force claim under the Fourth Amendment in

7

Count I and state law claims for assault, battery and excessive force in Count II. Doc. 18, at 4-7.  Officer Kirkwood contends that he is due summary judgment on the federal claim because of qualified immunity and on the state claims because of peace officer/state agent immunity.  Doc. 61, at 6 & 25.

## A.      Count I – Federal Excessive Force Claim – 42 U.S.C. § 1983

The court turns first to Plaintiff's section § 1983 excessive force claim and Officer Kirkwood's contention that he is entitled to qualified immunity.  *See* Doc. 61, at 8.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 129 S. Ct. 808, 815 (U.S. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson*, 129 S. Ct. at 815.  "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'"  *Id*. (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

To qualify for qualified immunity, Officer Kirkwood must show initially that

8

he was engaged in a discretionary duty during the event in question.  *See Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008).  Because Plaintiff does not dispute this fact, the burden shifts to Plaintiff to show that Officer Kirkwood is not entitled to qualified immunity.  *Id*.  In *Saucier v. Katz*, the Supreme Court mandated a two-step sequence for addressing qualified immunity claims: (1) the court first decides whether the facts alleged or shown by a plaintiff make out a violation of a constitutional right, and (2) the court then decides whether the right was "clearly established" at the time of the alleged violation.  533 U.S. 194, 201 (2001).  In *Pearson*, however, the Court held that courts need not adhere to the *Saucier*'s rigid two-step inquiry, and courts can decide the second question without reaching the first.  129 S. Ct. at 818.  This court will conduct the two-step inquiry in analyzing Officer Kirkwood's qualified immunity defense.

## 1.    Officer Kirkwood Violated Plaintiff's Constitutional Right

"In an excessive force case arising out of an arrest, whether a constitutional violation occurred is governed by the Fourth Amendment's 'objective reasonableness' standard."  *Hadley*, 526 F.3d at 1329 (citations omitted); *see also Graham v. Connor,* 490 U.S. 386, 394-95 (1989).  The question is whether the "officer's conduct is objectively reasonable in light of the facts confronting the officer."  *Vinyard v. Wilson,* 311 F.3d 1340, 1347 (11th Cir. 2002); *see also*

9

*Graham*, 490 U.S. at 396-97.  "[T]he determination of whether the manner of arrest was reasonable must be judged on a case-by-case basis from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Webster v. Beary*, 228 F. App'x. 844, 849 (11th Cir. 2007) (internal quotations omitted).  Furthermore, "a court must carefully balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests." *Fils v. City of Aventura*, 647 F.3d 1272, 1288 (11th Cir. 2011) (quoting *Graham*, 490 U.S. at 396).  The Eleventh Circuit considers several factors to determine "whether an officer's use of force was objectively reasonable, including '(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted, and (4) whether the force was applied in good faith or maliciously and sadistically.'" *Id.* (quoting *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000)).

"Deadly force is 'reasonable' for the purposes of the Fourth Amendment when an officer (1) has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others or that he has committed a crime involving the infliction or threatened infliction of serious physical harm; (2) reasonably believes that the use of deadly force was necessary to prevent escape;

and (3) has given some warning about the possible use of deadly force, if feasible."
*Robinson v. Arrugueta*, 415 F.3d 1252, 1255 (11th Cir. 2005) (citing *Vaughan v. Cox*, 343 F.3d 1323, 1329-30 (11th Cir. 2003) (internal quotations omitted) (quoting *Tennessee v. Garner*, 471 U.S. 1 (1985)); *see Crosby v. Monroe Cnty*, 394 F.3d 1328, 1333 (11th Cir. 2004).  Where, as here, the alleged threat is the suspect's use of an automobile to inflict harm, a shooting by an officer may be reasonable if the shooting victim "had used the automobile in a manner to give reasonable policemen probable cause to believe that it had become a deadly weapon with which [the shooting victim] was armed."  *Pace,* 283 F.3d at 1282. However, "[f]iring on a stationary vehicle containing an accident victim who was neither threatening the officers with harm nor a suspect in a crime . . . is an excessive use of force and a violation of a victim's right to be free from unreasonable seizures."  *Jones v. City of Atlanta*, 192 F. App'x. at 897 (11th Cir. 2006).  In fact, even when a suspect is fleeing at a high rate of speed, shooting into the fleeing vehicle is an unreasonable use of force that violates the Fourth Amendment when the victim's vehicle posed no immediate threat of serious harm at the time the officer fired.  *See also Vaughan*, 343 F.3d at 1329.  As the Supreme Court held in *Garner*:

> The use of deadly force to prevent the escape of all felony suspects,

11

whatever the circumstances, is constitutionally unreasonable. It is not better that all felony suspects die than that they escape.  Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.

*Garner*, 471 U.S. at 11.

    With these legal principles in mind, the court turns now to the facts here to ascertain whether Officer Kirkwood had a reasonable basis to believe that Plaintiff posed a deadly threat.  To make this determination, the court must view the facts in the light most favorable to Plaintiff, but assess "reasonableness from the perspective of a reasonable officer on the scene."  *Robinson*, 415 F.3d at 1255 (quoting *Menuel v. City of Atlanta*, 25 F.3d 990, 996 (11th Cir. 1994)).  As the Eleventh Circuit explained:

> When a district court considers the record in [the light most favorable to the party asserting the injury], it eliminates all issues of fact. By approaching the record in this way, the court has the plaintiff's best case before it. With the plaintiff's best case in hand, the court is able to move to the question of whether the defendant committed the constitutional violation alleged in the complaint without having to assess any facts in dispute.

*Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010) (quoting *Robinson*, 415 F.3d at 1257).  Thus, "[a]t the summary judgment stage, . . . once we have determined the relevant set of facts and drawn all inferences in favor of the

nonmoving party *to the extent supportable  by the record,* the reasonableness of

[the officer's] actions . . . is a pure question of law." *Penley*, 605 F.3d at 848-49

(quoting  *Scott v. Harris,* 550 U.S. 372, 381 n.8 (2007) (citations omitted and

emphasis in original)).

     This court must first decide whether the facts in the light most favorable to

Plaintiff support an excessive force claim.  *Saucier,* 533 U.S. at 201.  Here, Officer

Kirkwood contends the facts support a finding that he reasonably used deadly

force.  Doc. 61, at 13.  Specifically, Officer Kirkwood alleges that he had probable

cause to believe that Plaintiff intended to seriously injure or kill Officer Nugent

when Plaintiff allegedly accelerated his vehicle in Officer Nugent's direction.  Doc.

61, at 14.  This court recognizes that aggressive or reckless use of a vehicle can

justify the use of deadly force.  *See Pace*, 283 F.3d at 1282.  However, here, Officer

Nugent's own testimony about the events in question belies Officer Kirkwood's

contention that he acted reasonably in shooting Plaintiff seven times.  First, Officer

Nugent stated he did not remember seeing Plaintiff's vehicle move.  Doc. 60-3, at

25.  Second, Officer Nugent asserts that when he ran in front of Plaintiff's vehicle

and heard the engine rev up, he stepped a few feet back from the front of the

vehicle and drew his weapon on low.  Doc. 60-3, at 25-26.  In other words, Officer

Nugent removed himself from any danger by simply stepping away from the

vehicle's path.  Finally, and perhaps significantly, since it further casts doubt on

Officer Kirkwood's testimony that shooting Plaintiff was the only reasonable

course of action, Officer Nugent contends he would have fired his gun if he

actually felt threatened:

> Q.    You did not fire your weapon?
>
> A.    No, sir.
>
> . . . .
>
> Q.    Okay. My question to you, if you felt like you were in
>        immediate danger, would you not have fired your weapon?
>
> A.    Yes, sir.
>
> . . . .
>
> Q.    Thank you.  The means for you to remove yourself from the
>        front of the vehicle was to move back; is that correct?
>
> A.    For – yes, with my reaction.

Doc. 60-3, at 26-27.

In addition to Officer Nugent undermining Officer Kirkwood's testimony,

when the court views the facts in the light most favorable to Plaintiff, as the law

mandates, Plaintiff's version of the incident also casts doubt on the reasonableness

of Officer Kirkwood's actions.  Specifically, when Officer Kirkwood approached

Plaintiff's vehicle, Plaintiff contends he immediately placed his vehicle in park and

held his hands in the air[6] and that Officer Kirkwood started shooting without giving him any warning.  Doc. 60-1, at 27 & 29; doc. 60-2, at 25.  Finally, Plaintiff denies accelerating and trying to run over Officer Nugent, and, in fact, contends he never saw Officer Nugent.

After drawing all inferences in favor of Plaintiff, the court next makes the determination of reasonableness "from the perspective of a reasonable officer on the scene."  *See Robinson*, 415 F.3d at 1255.  In that respect, Officer Kirkwood contends that he shot Plaintiff because he felt Plaintiff intended to run over Officer Nugent.  Presumably, when Plaintiff saw Officer Kirkwood, Plaintiff opted to flee rather than answer Officer Kirkwood's questions.  It is clear from the record that although Plaintiff claims he never saw Officer Nugent, Officer Nugent was indeed present and, at one point prior to the shooting, stood directly in front of Plaintiff's vehicle.  It is also clear from Officer Kirkwood's perspective that Plaintiff revved the engine of his car – even though Plaintiff denied doing so – and, in fact, Officer Nugent confirms this fact.  Therefore, the issues of contention are whether Plaintiff's vehicle accelerated towards Office Nugent, which Plaintiff denies and which Officer Nugent does not recall Plaintiff doing, doc. 60-3, at 25, and whether

---

[6] Significantly, Officer Kirkwood also testified that he believes he saw Plaintiff's left hand on the steering wheel and that he did not see Plaintiff with a weapon.  Doc. 60-2, at 24.

shooting Plaintiff seven times was the reasonable response under the
circumstances.

Although the court recognizes that "[r]econsideration [of the situation] will
nearly always reveal that something different could have been done if the officer
knew the future before it occurred," *Carr v. Tatangelo*, 338 F.3d 1259, 1270 (11th
Cir. 2003), the court must still look at the overall context of the incident.  What is
abundantly clear here is that Officer Kirkwood had no reason to believe Plaintiff
was engaging in criminal activity from Plaintiff's mere presence in the park.
Indeed, although he felt Plaintiff's vehicle "looked" suspicious, Officer Kirkwood
admitted Plaintiff had a right to be in the park.  Doc. 60-2, at 8 & 20.  In fact,
according to Officer Nugent, he had no intention of arresting Plaintiff: "No, I
would have detained him for questioning, find out why he was there.  I had no – I
had no probable cause to arrest him at that time."  Doc. 60-3, at 26.  Critically,
Officer Kirkwood also testified that he never saw Plaintiff with a weapon.  Doc.
60-2, at 24.  Thus, at the time of the shooting, Plaintiff's alleged criminal conduct
was his attempt to flee by revving his car's engine and, perhaps, attempt to run over
Office Nugent.  Significantly, even if Plaintiff attempted to speed off as Officer
Kirkwood contends, the record here shows that less deadly means of responding
existed.  For example, as Officer Nugent did, Officer Kirkwood could have drawn

his weapon on low and waited to see if, in fact, Plaintiff posed any threat to Officer

Nugent.  This is especially the case in light of Officer Nugent's testimony that he

easily removed himself from the vehicle's path by just taking a few steps back, that

he does not recall Plaintiff's car ever moving, and that he would have fired his

weapon if he felt threatened by Plaintiff.  Doc. 60-3, at 25-27.

Where, as here, the officer directly in the path of the alleged threat posed by

Plaintiff chose not to fire his weapon because he felt other reasonable avenues of

responding existed, this court disagrees with Officer's Kirkwood's contention that

when the court views the facts "from the perspective of a reasonable officer *on the*

*scene*, rather than with the 20/20 vision of hindsight," the court would conclude

that Officer Kirkwood acted reasonably in shooting Plaintiff.  *See Webster*, 228 F.

App'x. at 849.  To the contrary, the best answer as to what "a reasonable officer on

the scene" that night would have done is what Officer Nugent did – i.e. step back

from the path of Plaintiff's car, draw weapon on low, and then discharge it if, in

fact, an immediate danger materialized or existed.  Critically, the court does not

have to resort to "20/20 vision of hindsight" to reach this conclusion; instead it can

make this determination simply by looking at how the other officer "on the scene"

responded.  In short, although this court cannot make credibility determinations at

the summary judgement stage, after viewing the facts in the light most favorable to

Plaintiff, including Officer Nugent's version of the incident and his own response to Plaintiff's alleged threat, this court finds that a genuine issue of fact exists as to whether Officer Kirkwood acted reasonably.

## 2.    Plaintiff's Right to be Free from Excessive Force was Clearly Established

In light of the court's finding that Officer Kirkwood has failed to establish that he acted reasonably and did not violate Plaintiff's constitutional rights, this court must decide next whether Officer Kirkwood violated a "clearly established" constitutional right at the time of the alleged violation.  *Saucier*, 533 U.S. at 201. As previously stated, "[q]ualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known."  *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005) (quoting *Lee v. Ferraro,* 284 F.3d 1188, 1193-94 (11th Cir. 2002)).  The existence of a clearly established statutory or constitutional right is determined in one of three ways: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated,

even in the total absence of case law." *Lewis v. City of West Palm Beach, Fla*., 561 F.3d 1288, 1291-92 (11th Cir. 2009) (internal citations omitted).

Although Officer Kirkwood acknowledges that he used deadly force on Plaintiff, doc. 60-2, at 10, he contends he is entitled to qualified immunity and, like Plaintiff, relies on *Garner*, 471 U.S. 1, to support his contention.  *See* doc. 61, at 12; doc. 66, at 20.  Again, in *Garner,* the Supreme Court stated:

> The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. It is not better that all felony suspects die than that they escape.  Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.

*Garner*, 471 U.S. at 11.  While the parties agree that deadly force may not be used on a suspect who poses no immediate threat to the officer or others, they disagree on whether Plaintiff posed an immediate threat to Officer Nugent.  Officer Kirkwood contends that he shot Plaintiff to stop Plaintiff from running over Officer Nugent, and that *Garner* supports his contention that he is due qualified immunity.

To further support his position, Officer Kirkwood cites to *Jean-Baptiste v. Gutierrez*, 627 F.3d 816 (11th Cir. 2010), doc. 61, at 8, 12 & 16, a case where an officer used deadly force against an armed suspect that laid in wait after fleeing from an armed burglary and robbery.  627 F.3d at 818.  After pursuing the suspect

19

on foot, the officer realized that the suspect had stopped approximately eight to ten

feet away and had his gun pointed at the officer.  As a result, the officer shot

continuously at the suspect fourteen times, hitting the suspect eight times and

paralyzing him.  *Id.*, at 819.  The suspect did not challenge the officer's initial shot.

Instead, he claimed that he fell to the ground "immediately" after the first shot, and

that the officer acted unreasonably by continuing to shoot him.  *Id.*, at 20.  The

Eleventh Circuit disagreed:

> [The officer] reasonably could have believed that probable cause
> existed, in light of the information [he] possessed[,] to shoot
> Jean–Baptiste, even if that belief was mistaken . . . . [The]
> [o]fficer'[s] use of force is judged objectively, and he is shielded from
> liability unless application of [that] standard would inevitably lead
> every reasonable officer in [his] position to conclude the force was
> unlawful.

*Jean-Baptiste*, 627 F.3d at 821.  Furthermore, because the suspect committed a

violent crime, attempted to elude the officer, and then confronted the officer while

armed, the court found that the suspect posed a threat of serious physical injury to

the officer and the surrounding residential area and that the officer had the right to

keep shooting until he could verify that the suspect no longer posed a threat.  *Id.*,

at 821.

      Officer Kirkwood relies also on *Webster v. Beary*, 228 F. App'x. 844 (11th

Cir. 2007), a case where the Eleventh Circuit granted qualified immunity to two officers who shot a suspect they believed tried to run over one of them. The incident occurred when the officers went to a gas station to apprehend the suspect and his friend. *Id.*, at 846. One officer pulled in behind and the other in front of the suspect's vehicle and then both officers exited their vehicles. *Id.* As the officers existed their vehicles, the suspect placed his vehicle in reverse and accelerated. *Id.*, at 847. Immediately thereafter, the suspect shifted the transmission to drive and accelerated in the direction of one of the officers. That officer fired two shots at the suspect and the officer behind the suspect's vehicle fired once at the suspect because both officers believed the officer in the vehicle's path was in "imminent danger." *Id.* One of the bullets struck the suspect in the shoulder. *Id.*, at 849. The suspect claimed he never tried to hit the officer and was only trying to get away because he did not know the two were police officers. *Id.* The Eleventh Circuit held that the officers acted reasonably because the suspect posed a threat of serious physical harm when he accelerated in the direction of one of the officers. *Id.*, at 851.

Conversely, Plaintiff directs the court to *McKinney v. DeKalb County*, 997 F.2d 1440 (11th Cir. 1993), where the Eleventh Circuit denied qualified immunity to one of three officers who responded to a 911 call from a mother who reported

21

that her son had locked himself in his bedroom with a knife.  *Id.*, at 1442.  When

the officers arrived at the residence, they found the juvenile son sitting on the floor

of his closet holding a butcher knife and a twelve-inch stick.  *Id.*  One officer knelt

a few feet away and spoke to the juvenile for about ten minutes with no response.

*Id.*  After some motion by the juvenile, in which he allegedly threw the stick and

began to get up, a second officer fired five shots, hitting the juvenile three times,

paralyzing him, and causing one of his legs to be amputated.  *Id.*  The Eleventh

Circuit held that a factual dispute existed as to what provoked the officer to fire

his gun in light of plaintiff's contention that her son had put down the knife and

was simply shifting positions when the officer shot him.  *Id.*, at 1443.  Thus, the

court denied summary judgment on qualified immunity grounds because, under

the plaintiff's alleged facts, the officer violated a clearly established law regarding

excessive force and a jury needed to decide the reasonableness of his actions.  *Id.*

Officer Kirkwood's reliance on *Jean-Baptiste* and *Webster* is misplaced

since both cases are distinguishable from the facts here.  Specifically, the officers

in both cases suspected the plaintiffs of committing crimes.  In fact, the plaintiff in

*Jean-Baptiste* actually possessed a weapon, and Webster admitted using his

vehicle in an aggressive manner.  Likewise, the recent case, *Terrell v. Smith*, No.

10-14908, slip op. 969, 974 (11th Cir. Jan. 30, 2012), in which the Eleventh

Circuit granted qualified immunity to an officer who fired two shots and killed a suspect who started driving while the officer was positioned in between the driver's side doorframe and the door of the car, is also distinguishable because it was undisputed that the suspect's car was moving and that the officer was dangerously positioned in the doorframe.

In contrast, here, Officer Kirkwood admits he never saw a weapon in Plaintiff's possession and that he did not suspect Plaintiff of committing a crime. Doc. 60-2, at 24. Instead, Officer Kirkwood entered the park because Plaintiff's vehicle seemed "suspicious." Furthermore, Officer Kirkwood's contention that Plaintiff used his vehicle as a weapon is disputed by Plaintiff, whose testimony is corroborated by Officer Nugent's testimony that he removed himself from any danger by stepping out of the vehicle's path, that he does not recall whether Plaintiff's car moved, and, critically, that he would have shot Plaintiff had he felt threatened. Doc. 60-1, at 27 & 29; doc 60-3, at 25-26. In other words, if the jury believes Plaintiff and Officer Nugent, then the jury could find that Officer Kirkwood acted unreasonably by firing on a stationary vehicle that posed no threat to Officer Nugent. Alternatively, the jury may well side with Officer Kirkwood and conclude that he fired his gun to prevent Plaintiff from running over Officer Nugent. This is a determination, however, for the jury to make. Although this

23

court recognizes that "police officers are often called upon to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation," *Graham*, 490 U.S. at 396-397, based on the facts here, including the discrepancy between Officers Nugent and Kirkland, this court simply cannot make credibility determinations and resolve the factual disputes to render a verdict for Officer Kirkwood.

In short, because the law is clearly established that using deadly force on an unarmed suspect merely to prevent escape is unconstitutional, *see Garner*, 471 U.S. at 11, and because it is apparent from the evidence that a genuine issue of material fact exists as to whether Officer Kirkwood acted reasonably by shooting Plaintiff seven times, therefore, consistent with the Eleventh Circuit's reasoning in *McKinney*, a jury must decide the reasonableness of Officer Kirkwood's actions. In denying Officer Kirkwood's motion, this court notes that its "job is to determine only whether the evidence can be read to support a denial of qualified immunity, not to predict how the jury will weigh the same evidence." *Edwards v. Shanley et al.*, No. 11 civ. 11512, slip op. 903, 906 n.1 (11th Cir. Jan. 12, 2012).[7]

_____

[7] In *Edwards*, the Eleventh Circuit denied qualified immunity to two officers who allowed a dog to bite a suspect for five to seven minutes even though the suspect was not resisting arrest, shouted this fact to the officers, and begged them to stop the attack. *Edwards*, No. 11 civ. 11512, at 903. After five to seven minutes, one officer mercifully placed the plaintiff in handcuffs and

24

In fact, the jury may well side with Officer Kirkwood.  However, that is a determination for the jury to make.  Accordingly, the court **DENIES** Officer Kirkwood's motion for summary judgment on the section 1983 claim.

### B.      Count II – Assault, Battery, and Excessive Force State Claim

As to Plaintiff's contention that Officer Kirkwood violated state law assault and battery and excessive force laws, doc. 18, at 6, Officer Kirkwood contends that he is entitled to state-agent immunity because he was "exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law enforcement officers' arresting or attempting to arrest persons, or serving as peace officers under circumstances entitling such officers to immunity pursuant to §6-5-338(a), Ala. Code 1975."  Doc. 61, at 28 (quoting *Hollis v. City of Brighton*, 950 So. 2d 300, 309 (Ala. 2006)).

Municipal police officers have immunity from any "tort liability arising out of [their] conduct in the performance of any discretionary function within the line and scope of [their] law enforcement duties."  ALA. CODE § 6-5-338(a).  However, as the Supreme Court of Alabama has explained, "[p]eace officers are not entitled

---

gave the dog a verbal command to release the bite.  *Id.*  Although the Eleventh Circuit held that using the dog to track the plaintiff was constitutional, it found that the duration of the attack constituted unreasonable force because the "[officers] subjected [the plaintiff] to five to seven minutes of dog attack, while [the plaintiff] was pleading to surrender and [the officer] was in a position to immediately effect the plaintiff's] arrest."  *Id.*, at 909-10.

to absolute immunity under § 6-5-338(a); rather, immunity from tort liability under § 6-5-338(a) 'is withheld if an officer acts with willful or malicious intent or in bad faith.'" *Ex parte City of Tuskegee*, 932 So. 2d 895, 906-07 (Ala. 2005) (quotation omitted).  Because a factual dispute exists regarding whether Officer Kirkwood shot at a stationary vehicle, whether Plaintiff immediately raised his hands, whether Plaintiff accelerated towards Officer Nugent, and, ultimately, whether Officer Kirkwood used excessive force by shooting Plaintiff seven times, the court declines to award immunity to Officer Kirkwood at this juncture. Additionally, Officer Kirkwood admitted that he intentionally tried to shoot Plaintiff and not the vehicle; thus, if the jury believes Plaintiff's alleged facts, the jury may consider Officer Kirkwood's behavior willful, malicious, or in bad faith. Doc. 62, at 29.  Therefore, the motion for summary judgment on the state law claims is **DENIED**.

## IV.  Conclusion

In sum, for the reasons stated above, this court **DENIES** Officer Kirkwood's motion for summary judgment.

**DONE** and ordered this 22nd day of February, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE